# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| DAVID SUBIL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 2:04-CV-0257 PS |
| ) | |
| SHERIFF OF PORTER COUNTY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

David Subil is a prisoner confined at a penal facility in Florida. This case deals with events that occurred while he was being held at the Porter County Jail as a federal pretrial detainee. Subil filed his original complaint pursuant to 42 U.S.C. § 1983, naming the United States Marshal as the sole defendant. The court denied Subil leave to proceed against the marshal and afforded him time within which to file an amended complaint. His amended complaint added Attorney General John Ashcroft, Porter County, the Porter County Sheriff, and John Doe officials as defendants. Finally, Subil filed a second amended complaint dropping Attorney General Ashcroft, Porter County, and the Doe defendants, and naming the marshal and the Porter County Sheriff as defendants.

The court screened the second amended complaint pursuant to 28 U.S.C. § 1915A, allowed Subil to proceed against the Sheriff of Porter County for damages on his claim based on the First Amendment's free exercise clause and 28 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and on his First and Fourteenth Amendment claim that the jail withheld publications and other mail from him without due process. The court dismissed the marshal and all other claims.

The defendant filed a motion for summary judgment, asserting that the plaintiff did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). The court granted that motion in part, dismissed the claim that the jail withheld publications and other mail from Subil without due process, and denied summary judgment on the claim that the Porter County Sheriff deprived him of his right to exercise his religion. The defendant has now moved for summary judgment on the merits, pursuant to Fed. R. Civ. P. 56, and Subil has responded.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, a court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

In paragraphs IX through XIII of his second amended complaint, Subil alleges that he is a practitioner of the Jewish faith. This requires that he adhere to a Kosher diet, observe the Sabbath, and be given access to certain religious items related to prayer. He alleges that policies and practices at the jail denied him all of these things. In support of his summary judgment motion, the sheriff submits portions of Subil's deposition. In his response, Subil provides his affidavit and documentary evidence.

The parties' submissions establish that Subil was confined at the Porter County Jail from March 18, 2004 through October 1, 2004. (Subil Deposition DE 74-3 pp. 12-13). Subil never

2

personally spoke with the sheriff about his religious claims, nor did the sheriff communicate with him about his religious concerns. (DE 74-3 pp. 14-17). Subil advised a jail official when he arrived at the jail that he was Jewish and that, because of his religion, he required a kosher diet. (DE 74-3 pp. 32, 36; DE 101-2 p. 1). But while he was at the jail, Subil never received any kosher meals, and jail personnel informed him that "they did not serve Kosher meals." (DE 74-3 p. 36). In response to his first grievance asking for a kosher diet, an official responded that the "kitchen has been notified." (DE 101-4). But it turned out that what the kitchen provided was not a kosher diet, but merely a non-pork diet. (DE 101-2 p. 1). Subil filed a second grievance requesting a kosher diet but this was also denied by the warden who merely stated "we will follow policy." (DE 109-5 at p. 1).

While he was at the jail, Subil was required to perform routine housekeeping tasks in and around his cell. (DE 74-3 p. 37). Subil did not have a Torah when he first arrived at the jail, but he received a Torah in the mail from a temple, and jail officials allowed him to keep it in his cell. ( DE 74-3 pp. 33-34). According to the plaintiff, tefillin are items used by observant Jews during prayer. (DE 74-3 p. 32). Subil had tefillin while he was at the jail, but it was stored with his property and he was not permitted to use it. (DE 74-3 p. 32). Tefillin contain six foot long leather straps, (DE 74-3 p. 27), and Subil does not deny that the tefillin could be used as a weapon. (DE 74-3 p. 80).

Subil sues the defendant for damages in his individual and official capacities on both the First Amendment claim and the RLUIPA claim. At the time the court screened the second amended complaint, the question of what sort of damage claims could be brought under RLUIPA had not been determined. But recently, *Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007), held that

RLUIPA could support a claim for damages against a defendant in his official capacity, but not in his individual capacity. *Id.* at 1274-1275. Moreover, pursuant to 42 U.S.C. § 1997e(e), prisoners are limited to nominal damages in RLUIPA claims, as well as First Amendment claims, absent evidence of actual physical harm. *Id.* at 1271. The Seventh Circuit cited *Smith v. Allen* with approval in *Koger v. Bryan,* 523 F.3d 789, 804 (7th Cir. 2008).

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). The Free Exercise Clause allows states to enforce neutral laws of general applicability even when those laws significantly burden religious practice. *Employment Division Department of Human Resources v. Smith* 494 U.S. 872, 887 (1990). A prison regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (1988). And prison administrators are accorded wide-ranging deference in the adoption of policies as are needed to preserve internal order and discipline and to maintain institutional security. *Whitley v. Albers*, 475 U.S. 312, 321-322 (1986).

The Religious Land Use and Institutionalized Persons Act provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>     (1) is in furtherance of a compelling governmental interest; and

>     (2) is the least restrictive means of furthering that
>     compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

RLUIPA does not define the term "substantial burden," but in a case interpreting the land use provisions of RLUIPA, the Seventh Circuit has stated that "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise . . . effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). The statute defines religious exercise to "include any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). Nevertheless, a substantial burden may be justified if it is the least restrictive means of furthering a compelling governmental interest. As the Supreme Court noted:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.
>
> \* \* \*
>
> Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

In his second amended complaint, the plaintiff asserted that the practice of his religion required a kosher diet, observance of the Sabbath, "and prayer requiring certain religious items." (Second Amended Complaint at p. 3). At his deposition, the defendant's counsel questioned Subil about what specific "religious items" he referred to in his complaint, and the plaintiff

5

mentioned the Torah and a tefillin. (DE 74-3 p. 33-34).

The defendant addresses the Torah in their motion for summary judgment. The evidence before the court establishes that jail officials did not prevent Subil from obtaining a Torah, and Subil concedes that he in fact did obtain a Torah and that jail officials allowed him to keep it in his cell. (DE 74-3 pp. 34-35). Indeed, in his deposition, Subil conceded "the Torah part's not important because I had one sent in." (DE 74-3 p. 32). And in his memorandum he does not contend that denial of a Torah violated his rights. Accordingly, the plaintiff has explicitly conceded that the Torah is not one of the items necessary to his religion that Porter County Jail officials denied him. So Subil has abandoned the portion of his claim relating to the denial of a Torah, and even if he didn't the Sheriff would be entitled to summary judgment under both the First Amendment and RLUIPA because the parties' submissions establish that he was allowed to possess a Torah in his cell.

The defendant also addresses the question of whether Subil was denied tefillin in violation of the Free Exercise Clause. The sheriff argues that tefillin could be used as a weapon, and that security is a legitimate penological concern, and therefore denial of tefillin does not violate the First Amendment. Subil does not deny that tefillin could be used as a weapon ( DE 74-3 p. 80), and from its description, it easily could be used in such a way. Accordingly, the defendant is entitled to summary judgment on the First Amendment claim.

Regarding Subil's tefillin claim under RLUIPA, even assuming that the denial of tefillin was a substantial burden satisfying the first prong of the RLUIPA test, the court must still consider whether the jail officials acted in furtherance of a compelling governmental interest in denying Subil's request that he be able to keep his tefillin in his cell. The defendant has raised a

valid security concern, stating that the tefillin could be used as a weapon – a point that Subil does not take issue with. Moreover, it states that resources were not available to monitor an individual inmate every day while he uses what is clearly a potential dangerous instrument in the course of a religious exercise. Under RLUIPA, the defendant bears the burden of proving that the jail took the least restrictive means of furthering that compelling government interest. 42 U.S.C. 2000 cc-1(a). In light of the deference owed to prison officials in such matters, *see Cutter*, 544 U.S. at 723, the defendant has shown that any burden placed on Subil's right to use tefillin is justified by its legitimate interests in prison safety, and that no less restrictive means of doing so were available.

Subil did not mention a Yamulke in the portion of his deposition that was submitted to the court as a religious item he was denied while he was at the jail, and the defendant does not address this claim in his summary judgment motion. Subil, however, asserts in his memorandum opposing summary judgment that there is a genuine issue of material fact as to whether the jail denied him a Yamulke. But there's a threshold problem with this claim; Subil neglected to mention the denial of the Yamulke in his grievances. As a result, he has failed to exhaust his administrative remedies as to this particular religious claim, and it is barred by 42 U.S.C. § 1997e(a).

Subil also asserts that he wished to observe the Jewish Sabbath by not engaging in any work. In his deposition, when asked what kind of work he was required to perform on the Sabbath, he responded "sweep and mop the day room, just stuff in your cell you were required to do. I mean, spray the place down, clean it up." (DE 74-3 p. 37). The defendant argues that Subil and other prisoners were treated under the same rules of general applicability, and Subil admits

that all inmates were required to work on the Sabbath. (DE 74-3 p. 37). Requiring all inmates to perform routine housekeeping tasks such as those the plaintiff describes in his deposition does not violate the First Amendment's Free Exercise Clause, *Employment Division Department of Human Resources v. Smith* 494 U.S. at 887, and the defendant is entitled to summary judgment on the First Amendment claim.

Defendant does not address Subil's Sabbath-related RLUIPA claim, despite the fact that the earlier screening order stated it survived the Court's earlier review. (DE 27 p. 5). While the defendant shows that the rule requiring Subil to clean his cell on Sabbath was a general one applied equally to all inmates, more than general applicability is required to defeat a RLUIPA claim. 42 U.S.C. § 2000cc-1(a). Since the burden is on the defendant to also establish that the application of the rule against Subil is the least restrictive means of furthering its compelling interest in prison cleanliness and order, Subil's RLUIPA Sabbath obsrevance claim survives summary judgment.

The plaintiff's final claim deals with kosher meals, a key component of the Jewish religion. The evidence before the court establishes that Subil requested kosher meals to satisfy the requirements of his religion on the day he arrived at the institution, that he continued to request kosher meals while he was at the jail, and that he was never provided with kosher meals. He specifically grieved the lack of kosher meals at the jail, and the jail warden denied his grievance thereby explicitly denying his request for such meals. Denying a kosher diet to a Jewish prisoner may constitute a substantial burden on the prisoner's religious exercise. *Baranowski v. Hart,* 486 F.3d 112, 125 (5th Cir. 2007) ("Given the strong significance of

keeping kosher in the Jewish faith, the TDCJ's policy of not providing kosher food may be deemed to work a substantial burden upon Baranowski's practice of his faith").

The defendant does not provide a specific argument as to what, if any, compelling governmental concerns formed the basis for his subordinates' refusal to provide Subil with the kosher meals he had requested for religious reasons. The courts can give deference to the positions of prison officials in a RLUIPA action only when the officials have set forth those positions and entered them into the record. *Koger v. Bryan*, 523 F.3d at 800. Security and economic concerns are compelling governmental interests. *Baranowski v. Hart,* 486 F.3d at 125. So if providing kosher meals presents a substantial budgetary problem, then a jail can deny such meals. *Id.* at 125-26. But it's the defendant's burden to present evidence to that effect.

The defendant has not asserted that providing Subil with a kosher diet would have caused problems in maintaining order. Giving one inmate a kosher diet would plainly have cost the Porter County Jail more than feeding all inmates the same meal, but the economic rationale discussed in *Baranowski* does not apply to this case in any event. Recall that Subil was a federal pretrial detainee, and he has presented undisputed evidence that the United States Marshals Service ("USMS") told jail officials in a written memorandum that the "USMS will reimburse jail facility for any kosher foods brought in." (DE 109-9). Accordingly, any extra cost for providing Subil with kosher meals would have been borne by the United States and there would have been no adverse impact on the Porter County Jail's budget.

So the defendant is entitled to summary judgment on the plaintiff's First Amendment and RLUIPA claims regarding the possession of religious items related to prayer, as well as his First Amendment Sabbath-related claim. But the defendant is not entitled to summary judgment on

the claim that the plaintiff was denied a kosher diet while he was confined at the Porter County Jail or his RLUIPA Sabbath observance claim.

The next issue is whether the defendant can be liable in both his individual and official capacities. Under § 1983, an official capacity damage claim against a municipal official "is not a suit against the official as an individual; the real party in interest is the entity." *Wilson v. Civil Town of Clayton, Indiana*, 839 F.2d 375, 382 (7th Cir. 1988). Municipalities cannot be held liable for damages under § 1983 unless a governmental policy or custom caused the alleged violation of the plaintiff's rights. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). A plaintiff may prevail by proving the existence of an express municipal policy that caused the alleged violation of his rights, *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734 (7th Cir. 1994); by establishing that the person who committed the constitutional tort was an official with policy-making authority, *City of St. Louis v. Parprotenik*, 485 U.S. 112, 123 (1988); or by establishing the existence of a practice or custom so widespread or persistent that it rises to the level of a policy that can fairly be attributed to the municipality. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989).

As for the Sabbath observance claim, the defendant does not dispute that it was its own rule which forced Subil to perform housecleaning duties on the day of the Jewish Sabbath, only that the policy was applied to everyone regardless of religion. Therefore the prison's policy is at issue. As for the dietary claim, Subil states that when he arrived at the jail he told the intake officer he was Jewish and that he wished to have a kosher diet while he was housed at the jail. The defendant contends that the court should discount any statement by the plaintiff that he was told verbally by subordinates of the Sheriff that there was a policy against providing kosher

meals because he has not laid a proper foundation for the introduction of such statements. But even if the defendant is correct in this argument, there is documentary evidence supporting this claim. Subil has provided undisputed evidence that he filed a grievance stating that he was Jewish and wanted "a diet sufficient and consistent with the Dietary Practice of my Religion to wit: Kosher food under Jewish and Rabbinacal (sic) standards" (DE 109-5 at p. 2). The jail warden denied this grievance, effectively denying his request for a kosher diet, with a written statement that "we will follow policy." (De 109-5 at p. 1). Even discounting any statement by the plaintiff that he was told verbally that there was a policy that kosher meals would not be provided, a reasonable fact finder could conclude from the warden's response to Subil's grievance that there was a policy at the Porter County Jail that no kosher meals would be provided to prisoners.

Section 1983 creates a cause of action for damages based on personal liability. A plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains, *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Benson v. Cady*, 761 F. 2d 335, 339 (7th Cir. 1985). The defendant asserts that the plaintiff cannot prove that he was personally involved in the denial of his request for a kosher diet. In response, Subil argues that if the sheriff established a policy that kosher meals would never be provided to inmates, he would be personally involved, citing cases where courts have held that an official who formulated a policy that violates a prisoner's rights may be personally culpable for the conduct of their subordinates who violate a prisoner's rights by

enforcing the policy. *Burton v. Kuchel*, 865 F.Supp. 456 (N.D. Ill. 1994); *Doe v. Angelina County, Texas*, 733 F.Supp. 245 (E.D. Tex. 1990).

The court has already concluded that there is evidence in the record from which a reasonable fact finder could conclude that there was a policy at the Porter County Jail that no kosher meals would be provided to prisoners. If there was a policy, someone other than the sheriff, such as the warden, may have been the official who promulgated it in which case the sheriff might be entitled to dismissal on grounds of lack of personal involvement. But the court cannot grant summary judgment on this ground based on the existing record.

Finally, the defendant argues that he is entitled to qualified immunity on the personal capacity damage claim "because Plaintiff cannot produce any evidence that he performed any action that violated any of the Plaintiff's clearly established constitutional rights." (DE 74-1 p. 5). Qualified immunity is immunity from suit rather than a mere defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Gregorich v. Lund*, 54 F.3d 410, 413 (7th Cir. 1995). Government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When reviewing a summary judgment motion, a court must accept the nonmoving party's version of events as true, and "extract all reasonable inferences from the evidence in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The only personal capacity damages claim remaining before the court is the claim that the jail should have accommodated Subil's religion by providing him with a kosher diet. The

principle that the First Amendment's Free Exercise Clause "includes dietary beliefs, as 'prison officials must provide a prisoner with a diet that is consistent with his religious scruples'" *Jackson v. Mann*, 196 F.3d 316, 320 (2nd Cir. 1999), quoting *Bass v. Coughlin,* 976 F.2d 98, 99 (2nd Cir. 1992)(*per curium*) was well established long before Subil set foot in the Porter County Jail. Accordingly, the defendant is not entitled to qualified immunity from damages.

\* \* \*

So here's where we're at: Subil may bring a First Amendment damage claim relating to the failure to serve kosher meals against the defendant in both his individual and official capacities. He may bring a RLUIPA damage claim against the defendant for both his dietary claim and his Sabbath observe claim, but only in the defendant's official capacity. *Smith v. Allen*, 502 F.3d at 1255. It's worth noting that this is really much ado about nothing. Subil is no longer being held in the Porter County Jail so he cannot get injunctive relief. The court dismissed his injunctive relief claim in its screening order of April 29, 2005 because when an inmate leaves a facility, his request for injunctive relief against officials of the first facility is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996), quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). Subil is no longer a pretrial detainee; he is a convicted felon housed in the Federal Bureau of Prison, and there is no practical likelihood that he will return to the Porter County Jail. So all Subil can get is money damages. But under 42 U.S.C. § 1997e(e) he is limited to nominal damages on both his RLUIPA and First Amendment claims. *Koger v. Bryan,* 523 F.3d at 804. This means that if he wins, all he'll get is a dollar. Given the current posture of the case, I cannot order the Porter County Jail to change its policy of refusing to serve kosher meals to Jewish

inmates or refusing to allow time off from housecleaning duties for the Sabbath. As a result, Subil only stands to get one dollar if he wins, and so it makes one wonder, what's the point?

## CONCLUSION

For the foregoing reasons, the court **GRANTS** the defendant's motion for summary judgment (docket #73) in part and **DENIES** it in part. The court **DENIES** the defendant summary judgment on the plaintiff's claim for nominal damages in his individual and official capacities on the allegation that he was denied a kosher diet while he was at the Porter County Jail, in violation of the First Amendment's Free Exercise Clause; **DENIES** summary judgment on the plaintiff's official capacity claims for nominal damages on the allegations that he was denied a kosher diet and denied the opportunity to observe Sabbath in violation of 28 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act, and **GRANTS** the defendant's motion for summary judgment in all other respects.

This matter is set for a final pretrial conference on December 1, 2008 at 1:00 PM Hammond time and for Jury Trial on January 15th at 9:00 AM in Hammond. The hearing will be held telephonically and will be arranged by the Court. The warden of the institution in which Subil is being held is Ordered to make Subil available for the hearing.

**SO ORDERED.**

ENTERED: October 22, 2008

                                                  /s Philip P. Simon
                                                  Philip P. Simon, Judge
                                                  United States District Court